IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| G&G CLOSED CIRCUIT EVENTS, LLC, | * |  |
| Plaintiff, | * |  |
| v. | * | Civil Action No. 8:23-cv-0652-PX |
| BLOW FISH HOUSE, INC., *et al.*, | * |  |
| Defendants. | * |  |

******

### MEMORANDUM OPINION

Pending before the Court is Plaintiff G&G Closed Circuit Events, LLC's ("G&G") Motion for Default Judgement. ECF No. 13. Defendants Blow Fish House, Inc. ("Blow Fish"), Yue Zhi Lin ("Lin"), and Bin Yao ("Yao") have not responded to the Complaint or this motion, and the time for doing so has passed. *See* Loc. R. 105.2.a. The matter has been briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court GRANTS default judgment as to Blow Fish but DENIES the motion as to the individual defendants.

**I.    Background**

G&G retained exclusive nationwide commercial distribution rights to the *Saul "Canelo" Alvarez v. Billy Joe Saunders Championship Fight* program which had been telecast nationwide on Saturday, May 8, 2021 (the "Fight"). ECF No. 1 ¶ 15; ECF No. 13-7. Blow Fish broadcasted the Fight at its commercial establishment without first obtaining a license or other permission from G&G. ECF No. 1 ¶¶ 18-20; ECF No. 1-4. On the night of the Fight, G&G's private investigator visited Blow Fish and saw the Fight on one of the seven large screen televisions in the establishment. ECF No. 1-4 at 2. The investigator did not pay a cover charge for entry. *Id.*

Blow Fish seats a maximum of 100 patrons, but for the time the investigator was there (10:38 p.m. to 12:09 a.m.) no more than 45 people were present.  *Id.* at 2, 3.  According to G&G, the licensing fee that it charged to broadcast the Fight for an establishment of this size was $1,200.  ECF No. 1-4 at 3; ECF No. 13-6.

G&G filed suit on March 9, 2023, against Blow Fish, Lin, and Yao.  As to Lin and Yao, G&G "believes," and "alleges" that they are managing members of Blow Fish.  ECF. No. 1 ¶¶ 6-9.  G&G also avers, with no supporting facts, that Lin and Yao "directed" non-specific "employees" to "unlawfully intercept and broadcast" the Fight.  *Id.* ¶ 10.  G&G further asserts that Yao and Lin had an "obvious and direct financial interest in the activities of Blow Fish House," including the unlicensed broadcast of the Fight.  *Id.* ¶ 11.  G&G, therefore, contends that all Defendants violated the Communications Act of 1934, as amended, 47 U.S.C. § 605 ("Communications Act") and the Cable and Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553 ("Cable Act").  *Id.* ¶¶ 14-30.

G&G properly served Defendants on March 15, 2023.  ECF No. 7.  Thereafter, Defendants made no effort to participate in this litigation.  The clerk entered default on April 14, 2023, pursuant to Federal Rule of Civil Procedure 55(a), and notified the Defendants by mail of the default.  ECF Nos. 9–12.  On July 10, 2023, G&G filed this motion for default judgment as to all Defendants.  ECF No. 13.

## II.     Standard of Review

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgement for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  "A defendant's default does not automatically entitle the plaintiff to the entry of a default

judgment; rather, that decision is left to the discretion of the court." *Joe Hand Promotions, Inc. v. Luz, LLC*, No. DKC-18-3501, 2020 WL 374463, at *1 (D. Md. Jan. 23, 2020); *see S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).  While the Fourth Circuit maintains a "strong policy that cases be decided on the merits," default judgement may be appropriate where a party is wholly unresponsive.  *Lawbaugh*, 359 F. Supp. 2d at 421 (internal quotation marks omitted) (quoting *Dow v. Jones*, 232 F. Supp. 2d 491, 494–95 (D. Md. 2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993))).

When considering a motion for default judgement, the Court accepts as true all well-pleaded factual allegations, other than those pertaining to damages.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact … [but] [t]he defendant is not held … to admit conclusions of law" (citation and internal quotation marks omitted)); *Disney Enter., Inc. v. Delane*, 446 F. Supp. 2d 402, 406 (D. Md. 2006) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." (citations omitted)).  Courts in this district analyzing default judgments have applied the standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to determine whether the allegations are well-pleaded.  *See, e.g., Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544–45 (D. Md. 2011); *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012); *United States v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832, at *3–4 (D. Md. Oct. 27, 2011).  Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied. *Balt. Line Handling*, 771 F. Supp. 2d at 544 (internal citations omitted) ("The record lacks any

specific allegations of fact that 'show' why those conclusions are warranted."); *see also Basba v. Xuejie*, No. PX-19-380, 2021 WL 242495, at *3 (D. Md. Jan. 25, 2021).  In this respect, "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."  *Balt. Line Handling*, 771 F. Supp. 2d at 540 (internal quotation marks omitted).  Rather, the Court must decide whether the "well-pleaded allegations in [the plaintiff's] complaint support the relief sought."  *Ryan*, 253 F.3d at 780.

Once liability is established, the Court cannot rely solely on the Complaint to assess damages.  *See Lawbaugh*, 359 F. Supp. 2d at 422; *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009).  The Court may either conduct an evidentiary hearing or accept affidavits and other documentary evidence into the record to determine what damages, if any, are warranted.  *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (citations omitted).

**III.     Analysis**

**A.       Liability**

G&G seeks default judgment as to both the Communications and Cable Act claims.  ECF No. 13-6 at 2, 3.  G&G acknowledges that it cannot recover under both Acts, and the Communications Act provides for greater potential recovery.  *Id.* at 6; *see also Joe Hand Promotions, Inc. v. Aguilar*, No. TDC-19-0458, 2019 WL 4071776, at *2 (D. Md. Aug. 29, 2019) (*citing J & J Sports Prods., Inc. v. Royster*, No. RWT-11-1597, 2014 WL 992779, at *2 (D. Md. Mar. 13, 2014)).  Thus, the Court will confine its liability analysis to the Communications Act claim (Count I).

Section 605 of the Communications Act "prohibits the unauthorized interception or receipt of 'digital satellite television transmissions.'"  *J & J Sports Prods., Inc. v. Beer 4 U, Inc.*,

No. TDC-18-2602, 2019 WL 5864499, at *3 (D. Md. Nov. 8, 2019) (quoting *J & J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 588 n.3 (D. Md. 2012)); *see also That's Ent., Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993) (prohibiting the interception or "unauthorized divulgence" of satellite communications and cable television services "which have been received legally for certain purposes" (internal quotations omitted)).  The Act provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a).  To establish liability, G&G need only show that "it had the exclusive commercial distribution rights" to the Fight, and that each Defendant broadcast the Fight "without authorization." *Beer 4 U*, 2019 WL 5864499, at *3; *see also Aguilar*, 2019 WL 4071776, at *3 (same).

When viewing the facts in the Complaint as true and most favorably to Defendants, Blow Fish violated the Communications Act in broadcasting the Fight without a license.  G&G owns the exclusive distribution rights to the Fight.  ECF No. 1 ¶ 15; ECF No. 13-7.  And Blow Fish never obtained a license from G&G in advance of its broadcasting the Fight on May 8, 2021.  ECF No. 1 ¶ 18; ECF No. 1-4.  Accordingly, liability as to Blow Fish is established.  *See Beer 4 U*, 2019 WL 5864499, at *4 (citing *That's Ent.*, 843 F. Supp. at 999 (holding a corporate defendant liable for the unauthorized exhibition of the broadcast of a boxing match to patrons at its commercial establishment); *J & J Sports Prods., Inc. v. Get Away Lounge, Inc.*, No. TDC-13-3064, 2015 WL 4638060, at *2–3 (D. Md. July 31, 2015) (same)).  The Court grants default judgment against Blow Fish.

The same cannot be said about Lin and Yao.  G&G seeks liability against Lin and Yao because they are "managing members" of G&G and appear on the liquor license for the

5

establishment. ECF No. 1 ¶¶ 6–7. Certainly, vicarious liability may be established if G&G shows that the individual defendant in fact maintained both a "right and ability to supervise that coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." *Beer 4 U*, 2019 WL 5864499, at *4 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (citation omitted)). Accordingly, some facts must demonstrate that Yao and Lin had the (1) "'right and ability to supervise the violative activity, although [they] need not actually [have] be[en] supervising because [they] need not know of the violative activity,' and (2) 'a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity.'" *Beer 4 U*, 2019 WL 5864499, at *4 (quoting *J & J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95–96 (3d Cir. 2018) (collecting cases); citing *J & J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 801–02 (10th Cir. 2016)).

No facts demonstrate that either Lin or Yao were in a position to supervise the broadcast of the Fight or that either financially benefited from the same. The investigator on-scene the night of the Fight broadcast specifically described the servers who engaged with her, but nowhere mentioned seeing or interacting with Lin or Yao. ECF No. 1-4. Nor are there any other facts that demonstrate either Lin or Yao had "the right or ability to supervise the violative activity." *Beer 4 U*, 2019 WL 5864499, at *4. Mere averments that G&G is "informed and believes" that each defendant had a "direct financial interest in the activities" of Blow Fish will not suffice.[1] ECF No. 1 ¶ 11. The motion for default is thus denied as to Lin and Yao.

---

[1] "An allegation made 'on information and belief' does not serve as a reliable foundation upon which to predicate a final judgment." *Balt. Line Handling*, 771 F. Supp. 2d at 543 (quoting *Oceanic Trading Corp. v. Vessel Diana*, 423 F.2d 1, 4–5 (2d Cir. 1970) (vacating default judgment that was based on factual assertions made "on information and belief")); *see also Optimum Welding*, 285 F.R.D. at 374 (finding a "deficiency of proof" where elements necessary to establish liability are alleged "upon information and belief"); *Int'l Painters & Allied Trades Indus. Pension Fund v. Royal Int'l Drywall & Decorating, Inc.*, No. SAG-18-3648, 2019 WL 5576961, at *4 (D. Md. Oct. 29, 2019) (following *Balt. Line Handling* and *Oceanic Trading*). This is especially so when no facts

The Court next considers G&G's request for damages against Blow Fish.

**B.     Damages**

G&G seeks statutory damages under the Communications Act.  ECF No. 13 at 2; ECF No. 13-3 at 6.  The Communications Act allows a court to impose "a sum of not less than $1,000 or more than $10,000, as the court considers just," for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).  The "statutory damages should approximate the amount the Plaintiff is out-of-pocket due to the violation." *Luz*, 2020 WL 374463, at *2 (quoting *J & J Sports Prods., Inc. v. Mumford*, No. DKC-10-2967, 2012 WL 6093897, at *3 (D. Md. Dec. 6, 2012)).  In this district, courts often look to the licensing fee charged for lawful broadcast of the program as a proper benchmark.  *See Aguilar*, 2019 WL 4071776, at *3; *J & J Sports Prods., Inc. v. Plaza Del Alamo, Inc.*, No. TDC-15-0173, 2016 WL 153037, at *3 (D. Md. Jan. 12, 2016); *J & J Sports Prods., Inc. v. KD Retail, Inc.*, No. PX-16-2380, 2017 WL 1450218, at *2 (D. Md. Apr. 20, 2017).  The fee was $1,200 to broadcast the Fight.  ECF No. 1-4 at 3; ECF No. 13-6.  The Court therefore awards G&G $1,200 in statutory damages.  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).

G&G also seeks $3,600 in enhanced damages.  ECF No. 13 at 2; ECF No. 13-3 at 9.  Under § 605(e), if "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000."  47 U.S.C. § 605(e)(3)(C)(ii).  Courts look to several factors to determine whether enhanced damages are warranted, including: "(1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5)

---

support the conclusory averments.  *See Optimum Welding*, 285 F.R.D. at 374; *see also Balt. Line Handling*, 771 F. Supp. 2d at 544–45 (denying motion for default judgment because supporting allegations were not "well-pleaded").  Averments based on G&G's "informed" "belie[f]" is the functional equivalent of averments based on "information and belief"; they compel no different result.

charging an admission fee or charging premiums for food and drinks." *Aguilar*, 2019 WL 4071776, at *3 (quoting *J & J Sports Prods., Inc. v. Quattrocche*, No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010)); *see also KD Retail*, 2017 WL 1450218, at *2.

According to the record evidence, Blow Fish did not have patrons pay a cover charge or a food-and-drink premium, and the establishment was substantially below capacity on the night that it broadcast the Fight.  *See* ECF No. 1-4.  Moreover, nothing suggests that Blow Fish has repeatedly violated the Act or that it substantially profited from broadcasting the Fight.  That said, Blow Fish chose not to participate in this litigation entirely, reflecting a remarkable unwillingness to comply with the law.  On this record, the Court will award $2,400 in enhanced damages, or double the statutory damages imposed.  *See Aguilar*, 2019 WL 4071776, at *3, 4.

G&G also seeks attorneys' fees and costs, which are available under the Communications Act.  47 U.S.C. § 605(e)(3)(B)(iii).  The Court calculates reasonable attorneys' fees using the lodestar method, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *Aguilar*, 2019 WL 4071776, at *5; *see Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998).  G&G requests $1,850 in attorneys' fees for work performed by two attorneys, Richard and Ryan Kind.  ECF No. 13-8 at 1–2.  For the reasonable hourly rate applicable to each professional involved in the matter, the Court is guided by Appendix B of the Local Rules, which sets forth a presumptively reasonable range of hourly rates keyed to an attorney's years of experience.  *See* Loc. R., App. B.; *see also Reyazuddin v. Montgomery Cnty., Md.*, No. DKC-11-951, 2022 WL 4608331, at *11 (D. Md. Sept. 30, 2022) (quoting *Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2021 WL 3856287, at *4 (D. Md. Aug. 27, 2021) (quoting *Chaten v. Marketsmart LLC*, No. PX-19-1165, 2020 WL 4726631, at *3, 6 (D. Md. Aug. 14, 2020)).  Both attorneys apply presumptively reasonable rates.  ECF No. 13-8 at 1–3 (Richard

8

Kind with more than 40 years' experience at $350.00/hour and Ryan Kind with eight years' experience at $250/hour).[2]

Next as to the hours expended, Richard Kind spent roughly three and a half hours meeting with his client and drafting and filing the Complaint.  *Id.* at 4.  Ryan Kind expended two-and-a-half hours researching and drafting this motion.  *Id.*  This work performed is reasonable.  *See KD Retail*, 2017 WL 1450218, at *3 n. 1 (finding that attorneys spending 4.5 hours on matter is modest); *Aguilar*, 2019 WL 4071776, at *5 (finding that attorneys spending 3.3 hours and paralegal spending 7.8 hours is reasonable).  Therefore, the Court will award G&G $1,850 in attorneys' fees.

Last as to costs, G&G seeks reimbursement for the $402 filing fee, $27 to use a courier service, process-service fees of $140, and $575 to pay its investigator.  ECF No. 13-8 at 2, 3.  The requests are well supported.  *Id.* at 2, 5–8.  Therefore, the Court will also award $1,144 in costs.

## IV. Conclusion

For the above reasons, G&G's default judgement motion will be granted in part and denied in part, and judgement will be entered against Blow Fish House, Inc. for a total of $3,600 in damages and $2,994 in attorneys' fees and costs.  A separate Order follows.

|  |  |
|---|---|
| __10/25/23__ | ___/s/___ |
| Date | Paula Xinis |
|  | United States District Judge |

---

[2] Although the attorney affidavit supporting the requested fees suggests that Ryan Kind uses a billable rate of $200 per hour, the billing records reflect an actual billable rate of $250.  ECF No. 13-8 at 1, 3.  Because the $250 hourly rate is presumptively reasonable, the Court employs that rate.  *See* Loc. R., App. B.